UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LAQUISHA J. MOORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:11-cv-00247-TWP-MJD |
| ) | |
| MICHAEL J. ASTRUE Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Laquisha J. Moore ("Ms. Moore") filed this action seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act and for supplemental security income ("SSI") under Title XVI of the Social Security Act. 42 U.S.C. §§ 416(i), 423, and 1382c.[1]  For the reasons set forth below, the Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

## I. PROCEDURAL HISTORY

Ms. Moore filed her application for DIB and SSI on October 2, 2007, alleging a disability onset date of August 19, 2007.  These claims were initially denied on February 18, 2008, and upon reconsideration on July 30, 2008.  Thereafter, Ms. Moore requested a hearing, which was held on April 26, 2010.  On May 11, 2010, Administrative Law Judge Albert Velasquez (the "ALJ") denied her applications, and on January 4, 2011, the Appeals Council affirmed the ALJ's

---

[1] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

denial. The ALJ's decision is therefore the final decision of the Commissioner for purposes of judicial review.

## II. FACTUAL BACKGROUND AND MEDICAL HISTORY

Ms. Moore was thirty-six years old at the time of the ALJ's decision. She graduated from high school, obtained her nurse's aide certification in 1995, and completed two years of college in 2002. She has past relevant work experience as a nurse's aide, warehouse receiving clerk, and van driver. Ms. Moore last worked in December 2008 as a part-time van driver for a daycare.

Ms. Moore has a history of systemic lupus erythematosus ("SLE" or "lupus") going back several years, and although she alleges an onset date of August 19, 2007, she provided medical evidence relating to her condition dating back to 1998. However, the only evidence relevant to Ms. Moore's application includes records that begin with her alleged onset date of August 19, 2007; therefore, only her medical history from that time period will be addressed herein. *See* 20 C.F.R. § 404.1512(d).

On April 6, 2008, while on vacation in Florida, Ms. Moore was seen at the emergency room for severe right knee pain, edema, and redness as a result of an infection alleged to have been caused by a lupus flare up. [R. at 927-28.] After returning to Indianapolis, Indiana, she was seen by Dr. Dan Rains ("Dr. Rains") at Community Hospital for a follow-up and was treated for a MRSA infection on her right knee. Dr. Rains reported that Ms. Moore had low white blood cell count and general weakness, and was taking Plaquenil for lupus. [R. at 952-53.] Dr. Rains also noted that Ms. Moore was unable to work. [R. at 959.]

Ms. Moore began seeing rheumatologist Dr. Larry Greenbaum ("Dr. Greenbaum") in June 2008. She told Dr. Greenbaum that she had been diagnosed with lupus in 2003. At the time of her initial examination, Ms. Moore told Dr. Greenbaum that her symptoms included

weight loss, aching, fatigue, and fever. [R. 1026-27.] At a follow up visit a few weeks later, Dr. Greenbaum noted that Ms. Moore "certainly has ample evidence of SLE," that she had low white blood cell count, and that he was concerned about her weight loss. [R. at 1064-65.] Ms. Moore was to follow up in two months, but she did not see Dr. Greenbaum again until July 2009 where she complained of a fever, achiness, chest pain, and panic attacks. [R. at 1066.] Dr. Greenbaum stated that Ms. Moore sounded as if she had several flare ups of lupus during the past year. He continued her prescription for Plaquenil and suggested that she may need stronger immunosuppressant medication, but that she would need to come back for follow up visits and have regular lab work done. However, because Ms. Moore had problems with transportation and had lost her medical insurance in 2007, [R. at 38, 1066.] she did not see Dr. Greenbaum again on October 21, 2009. At that time she had swollen lymph nodes, fatigue, and a fungal infection of both big toenails that was resistant to two months of treatment with Lamisil anti-fungal medication. [R. at 1072-73.]

    Ms. Moore has a history of mood disorder that may or may not be related to her lupus. Prior to her onset date, Ms. Moore attempted suicide twice within less than a year and was admitted to Community Hospital for a psychiatric evaluation on May 28, 2007. [R. at 392, 717, 848.] On January 24, 2008, Ms. Moore was evaluated by SSA consulting physician, Greg Lynch, PhD ("Dr. Lynch"), for a psychological assessment. Dr. Lynch reported that Ms. Moore had a depressed mood, weight loss, fatigue, uncontrollable worry, frequent episodes of memory loss, pervasive feelings of worthlessness, and fleeting thoughts of suicide. Dr. Lynch assigned her a Global Assessment of Functioning or GAF score of 51 due to the severity of her psychological signs and symptoms. [R. 877-81.] In April 2008, Ms. Moore began psychological therapy treatment at Gallahue Mental Health Services. [R. at 1051-52.] She was diagnosed with

major depression and assigned a GAF score of 57. Ms. Moore reported having visual and auditory hallucinations and complained of social isolation, insomnia, and lupus flares. Ms. Moore's file was closed in July 2008 because she stopped attending her appointments due to lack of medical insurance. [R. at 38, 1053-64.]

At the administrative hearing, Ms. Moore testified that she has lupus flares for one to two weeks every two months, which prevents her from working full time. [R. at 32.] She testified that her lupus symptoms include dizziness, fatigue, loss of appetite, loss of toenails due to fungal infection that has been resistant to treatment, loss of teeth, hair loss, weight loss, severe pain in her joints and muscles, eye reddening, poor circulation resulting in her hands turning blue and going numb, migraine headaches, poor memory, blurry vision, swollen lymph nodes, depressed immune system, and lock jaw. [R. at 32-33.] She has blacked out twice, once causing her to fall in the shower and once while driving, causing a serious accident. [R. at 35.] She further explained that fevers were caused by her low white blood cell count and the hospitals where she sought treatment had to keep her in isolation because of her depressed immune system. [R. at 36.] She had also lost about six or seven pounds at the time of the hearing. [R. at 37.] The ALJ noted that there were several records of Ms. Moore having intense pain everywhere. [R. at 36.]

With regard to her mental impairments, Ms. Moore testified that she frequently had suicidal thoughts because she was tired of being sick all of the time. [R. at 33.] She testified to attempting suicide twice, having panic attack two times per week, and anxiety. [R. at 33-34.] She attended a few therapy sessions at Gallahue Mental Health Center, but she could not continue treatment because she did not have medical insurance. [R. at 38.]

At the ALJ's request, vocational expert Ray Burger (the "VE"), appeared at the hearing. The VE classified Ms. Moore's past work as a certified nursing assistant as medium and semi-

skilled work. He classified her work as a receptionist as sedentary and semi-skilled work, her work as a receiving clerk as medium and unskilled, and her work as a van driver as medium and low semi-skilled work. [R. at 46.] In response to the ALJ's hypothetical to the VE, which included simple repetitive work with a number of physical restrictions, the VE opined that Ms. Moore could not perform her past work, but that there were several positions that she could perform. [R. at 47.] However, when asked to assume that the individual would need to be absent from work on an average of one week out of every month due to lupus flares, the VE testified that there would be "no work whatsoever" for the individual to perform. [R. at 47-48.]

### III.  DISABILITY AND STANDARD OF REVIEW

To be eligible for SSI/DIB, a claimant must have a disability under 42 U.S.C. § 423. "Disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. 20 C.F.R. §§ 404.1520 and 416.924. If disability status can be determined at any step in the sequence, an application will not be reviewed further. *Id*.

At the first step, if the claimant is currently engaged in substantial gainful activity, then she is not disabled. At the second step, if the claimant's impairments are not severe, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § § 404.1520(c) and 416.924(c). Third, if the claimant's impairments, either singly or in combination, meet or equal the criteria for any of the conditions included in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of

Impairments"), then the claimant is deemed disabled. The Listing of Impairments are medical conditions defined by criteria that the SSA has pre-determined are disabling. 20 C.F.R. § 404.1525. If the claimant's impairments do not satisfy a Listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. §§ 404.1545 and 416.945. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. Fifth, considering the claimant's age, work experience, and education (which are not considered at step four), and her RFC, she will not be determined to be disabled if she can perform any other work in the relevant economy.

A person will be determined to be disabled only if her impairments "are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3) (B). The combined effect of all of a claimant's impairments shall be considered throughout the disability determination process. 42 USC §§ 423(d)(2)(B) and 1382a(a)(3)(G). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner at the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

The Social Security Act, specifically 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's denial of benefits. When the Appeals Council denies review of the ALJ's findings, the ALJ's findings become the findings of the Commissioner. *See Hendersen v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). This Court will sustain the ALJ's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th

Cir. 1999). In reviewing the ALJ's findings, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ. *Id*. Although a scintilla of evidence is insufficient to support the ALJ's findings, the only evidence required is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Further, "[a]n ALJ may not discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the [Court] to trace the path of his reasoning." *Diaz*, 55 F.3d at 307. An ALJ's articulation of his analysis "aids [the Court] in [its] review of whether the ALJ's decision was supported by substantial evidence." *Scott v. Heckler*, 768 F.2d 172, 179 (7th Cir.1985).

The ALJ's findings of fact, if supported by substantial evidence, are conclusive; however, "[i]n coming to his decision ... the ALJ must confront evidence that does not support his conclusion and explain why it was rejected." *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003). The ALJ's decision must also demonstrate the path of reasoning, and the evidence must lead logically to his conclusion. *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996). While the ALJ need not discuss every piece of evidence in the record, he must provide at least a glimpse into his reasoning through an adequate discussion, otherwise it will be remanded. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Zurawski v. Halter*, 245 F.3d 881, 888–89 (7th Cir. 2001).

## IV. THE ALJ'S DECISION

The ALJ made the following findings as part of his decision. Ms. Moore met the insured status requirements of the Social Security Act for purposes of DIB through December 31, 2011. Ms. Moore had not engaged in substantial gainful activity since August 19, 2007, which is her alleged onset date. The ALJ determined that Ms. Moore has the following severe impairments: systemic lupus erythematosus, connective tissue disease, depression, anxiety, Raynaud's Syndrome, and headaches. He found that these impairments interfered with Ms. Moore's ability to perform at least some basic work-related activities limited to performing only simple, repetitive tasks with some physical restrictions. The ALJ then determined that Ms. Moore does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in the regulations.

The ALJ determined that Ms. Moore had the RFC to perform medium work with some exceptions. He concluded that Ms Moore has the ability to lift and carry fifty pounds occasionally and twenty-five pounds frequently; stand and walk for six of eight hours and sit for six of eight hours in a work day, provided that the work allows her to alternate to a sitting or standing position for one to two minutes every hour. Ms. Moore should avoid climbing of ropes, ladders or scaffolds; do no more than occasional climbing of stairs or ramps; do no crawling or kneeling; avoid even moderate exposure to hazards such as unprotected heights, dangerous moving machinery, operating a motor vehicle or work around open flames or large bodies of water.

The ALJ then found that, although there is adequate evidence to support a diagnosis of lupus, the disorder is not severe enough to preclude all substantial gainful activity. The ALJ relied on records from the consultative examiner and Dr. Greenbaum to determine that Ms.

Moore exhibited only mild signs and symptoms of lupus, and that her allegations of frequent flare ups are not credible because they are not corroborated by contemporaneous medical reports or any other evidence other than her own statements. He further found that the consultative examiner's psychological assessment indicates mild to moderate severity, and there is no evidence to corroborate Ms. Moore's claims of frequent panic attacks. For both her lupus and depression, the ALJ concluded that her limitations in activities of daily living, social functioning, and concentration, persistence or pace were not severe enough to meet the listings for either lupus or affective disorder. The ALJ concluded that although Ms. Moore is unable to perform her past relevant work, she could still perform jobs that exist in significant numbers in the Indiana economy.

## V. <u>DISCUSSION</u>

Ms. Moore makes three arguments on appeal. First, she argues that substantial evidence fails to support the ALJ's step three denial decision. Second, she argues that the ALJ's credibility determination was patently erroneous because it is contrary to Social Security Ruling 96-7p. Finally, she argues that substantial evidence fails to support the ALJ's erroneous step five determination that she was not disabled because she could perform some jobs.

**A.    Did the ALJ support his step three determination with substantial evidence?**

Ms. Moore argues that substantial evidence fails to support the ALJ's determination at step three that her combined lupus and major depression did not meet or medically equal a listed impairment, and that the ALJ arbitrarily rejected treatment-examination evidence which proved that her combined impairments met or medically equaled a listed impairment. Additionally, Ms. Moore argues that the ALJ's failure to summon a medical advisor – specifically a rheumatologist

and a psychologist – to testify whether her combined impairments medically equaled a listed impairment constitutes reversible error.

> **1. The ALJ failed to support his conclusions at step three with substantial evidence and ignored relevant evidence.**

Ms. Moore cites to several medical records that pre-date her alleged onset date, arguing that the ALJ erroneously disregarded this evidence that supported a finding of disability. The regulations state that "we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary…." 20 C.F.R. § 404.1512(d). However, when a claimant alleges that her disability began less than twelve months before the application for benefits was filed, the medical history is to be developed beginning the month that the disability allegedly began, unless there is reason to believe that the disability began earlier. 20 C.F.R. § 404.1512(d)(2). Thus, the ALJ was only required to consider evidence beginning in August 2007, the month of Ms. Moore's alleged onset date. Nonetheless, there is relevant evidence in the record that contradicts the ALJ's conclusions that Ms. Moore did not meet a listed impairment for which the ALJ failed to account, and the ALJ failed to support his conclusions at step three with substantial evidence.

In order to meet the Listing for lupus, a claimant must satisfy the criteria in either subpart A or B of the Listing. To meet 14.02A, medical evidence in the record must establish a diagnosis of systemic lupus erythematosus involving two or more organs/body systems, with one of the organs/body systems involved to at least a moderate degree of severity,[2] and at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

---

[2] In determining what constitutes "severe," the regulations state that severe means medical severity as used by the medical community, not the definition of severity as it relates to the findings at the second step of the sequential evaluation process. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 14.00(C)(12).

20 C.F.R. Part 404, Subpart P, Appendix 1, § 14.02.  In order to meet the criteria of 14.02B, the claimant must have repeated manifestations of SLE, at least two of the constitutional symptoms or signs, and one of the following limitations at the marked level: limitations of activities of daily living; limitation in maintaining social functioning; or limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.  *Id*.

Despite acknowledging that the medical records present evidence of lupus, the ALJ determined that Ms. Moore's impairment did not meet the listings based upon his review of the records from Dr. Greenbaum and the state agency medical consultants. The ALJ concluded that Ms. Moore's lupus does not meet the level of severity described in section 14.02A, and that she does not satisfy the requirements in 14.02B with regard to a marked limitation in activities of daily living, social functioning, or completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

Based upon the evidence in the record dating back to the alleged onset date, the ALJ has provided adequate support for his conclusion that Ms. Moore does not meet the requirements of listing 14.02A.  The ALJ addressed a sufficient amount of evidence from Dr. Greenbaum relating to the criteria for 14.02A to support his conclusion that Ms. Moore did not have involvement of two or more organs/body systems, one of which being involved to at least a moderate degree of severity.  The evidence cited from Dr. Greenbaum does indicate that, while Ms. Moore does have leukopenia, a hematologic disorder, it only presents a slight risk of infection.  The Court finds that a reasonable mind could accept this as adequate to support the ALJ's conclusion with respect to 14.02A.  *See Diaz*, 55 F.3d at 305.

However, with regard to the requirements of listing 14.02B, as well as evaluating the criteria for listing 12.06 for affective disorders, the ALJ fails to support his conclusion that Ms.

11

Moore has no marked limitations in the various areas of functioning with substantial, relevant evidence. The ALJ cites to the fact that Ms. Moore has a valid driver's license, has completed high school, some college, and has her certification as a nurse's assistant as evidence that she only has mild restrictions in activities of daily living. [R. at 13.] However, these activities all predate Ms. Moore's alleged onset date by several years, even decades. As noted above, the ALJ was required to consider evidence of disability going only back to the date of her alleged onset date, and he clearly disregarded evidence of disability pre-dating this date. He cannot later support his conclusion that Ms. Moore has only mild limitations in her activities of daily living by citing to activities that occurred in the 1990's, specifically her completion of high school and her CNA, and her college attendance which occurred in 2002. [R. at 43].

     The ALJ also wholly failed to mention the Third-Party Function Report in his written decision, which contradicts the ALJ's findings regarding Ms. Moore's limitations. The ALJ supported his conclusion that Ms. Moore has no marked limitations in activities of daily living by stating that she is the primary caregiver to three children, but fails to consider contradictory evidence provided by her sister-in-law, Kelly Moore, in which she states that she must help Ms. Moore daily with the care of her youngest child, and that the older children also have to help Ms. Moore with the youngest child, daily chores and yard work. [R. at 177.] With regard to Ms. Moore's limitations in social functioning, the ALJ supports his conclusion that she has no marked limitations by stating that she has not had any episodes of anti-social behavior since her onset date, citing to her arrests that occurred in 1995 and 2002. [R. at 14, 878.] However, the ALJ failed to address Kelly Moore's statements that Ms. Moore has difficulty with family and social interaction, cries daily, has fears of dying, needs reminders to pay bills, only drives when she feels well, and that she cannot get out of bed when she has lupus flare ups. [R. at 177-79.]

While the ALJ is not required to mention every piece of evidence in his opinion, he is not permitted to simply ignore evidence that undermines his conclusion and fail to explain the omission. *Carlson,* 999 F.2d at 181; *Herron*, 19 F.3d at 333. In addition to medical evidence, the ALJ must also consider evidence from non-medical sources in determining the severity of a claimant's impairments and how it affects her ability to function. 20 C.F.R. § 404.1513(d)(4); Social Security Ruling 06-03p (2006). Here, the ALJ relied on evidence that pre-dated Ms. Moore's onset date to justify his conclusion that her conditions did not meet a listed impairment, yet ignored relevant evidence supporting her allegations regarding the severity of her impairments. The ALJ's failure to support his conclusions with substantial evidence and failure to consider all of the relevant evidence constitutes reversible error.

### 2. The ALJ was not required to summon a medical advisor.

Ms. Moore argues that the ALJ should have summoned a medical advisor to testify as to whether she met the requirements of a listed impairment, and argues that, because no medical expert testified at Ms. Moore's hearing, the ALJ's step three findings were based upon his layman's opinion. The decision to use a medical expert is discretionary; an ALJ may ask for and consider opinions from medical experts on the nature and severity of impairments, but there is no requirement in the regulations that he must do so. *See* 20 C.F.R. 416.927(f)(2)(iii). "If the ALJ believes that he lacks sufficient evidence to make a decision, he must adequately develop the record and, *if necessary*, obtain expert opinions." *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) (emphasis added). Thus, the ALJ's failure to summon a medical advisor is not reversible error.

### B. Did the ALJ err in his credibility determination by placing undue emphasis on Moore's gaps in treatment?

Ms. Moore argues that the ALJ's credibility determination is contrary to the requirements

of Social Security Ruling 96-7p. The ALJ found Ms. Moore's statements regarding the frequency of her lupus flare ups to be not credible because the allegations were not corroborated by contemporaneous medical reports, but did not consider explanations as to why she failed to seek regular medical treatment. In assessing a claimant's credibility, the ALJ must consider subjective complaints regarding the severity of her symptoms if the claimant can establish a medically determined impairment that could reasonably be expected to produce symptoms. *See* 20 C.F.R. § 404.1529; Social Security Ruling 96-7p; *Clifford,* 227 F.3d at 871. Further, the ALJ cannot reject a claimant's testimony about limitations on her daily activities solely by stating that such testimony is unsupported by the medical evidence. *Clifford,* 227 F.3d at 871.

The ALJ did not follow the requirements of the regulations and the Social Security Ruling in that he disregarded Ms. Moore's assertions regarding the frequency and severity of her lupus flare ups based upon the fact that there were no contemporaneous medical reports of such flare ups. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 14.00(H) states that "we will not draw any inferences from the fact that you do not receive treatment or that you are not following treatment without considering all of the relevant evidence in your case record, including any explanations you provide that may explain why you are not receiving or following treatment." Social Security Ruling 96-7p also states that "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanation that the individual may provide…that may explain infrequent or irregular medical visits or failure to seek medical treatment."

The ALJ fails to account for Ms. Moore's testimony that she had no medical insurance, and thus was unable to seek treatment at the time of her flare ups. [R. at 38.] The ALJ assumed

that it "may" have been that the flare ups occurred due to lack of follow up with Dr. Greenbaum between June 25, 2008 and July 2009, but cites to nothing in support of this assumption. [R. at 13.] The ALJ discredits Ms. Moore's statements about the frequency of her flare ups due to lack of evidence, but then speculates as to the cause of the flare ups without any relevant supporting evidence. He states in support of his conclusion that Ms. Moore admitted that she never lost a job due to excessive absenteeism related to her flare ups, but again, this evidence pre-dates the alleged onset date, which is the last date that Ms. Moore engaged in substantial gainful activity. The Court finds the ALJ impermissibly drew inferences about Ms. Moore's symptoms and credibility from her lack of medical treatment contrary to SSR 96-7p and the Listing of Impairments, which constitutes reversible error.

C.    **Does Substantial evidence support the ALJ's step five determination?**

Finally, Ms. Moore argues that the ALJ erred at step five because he failed to consider all of her limitations in determining that there are jobs that she could perform. As discussed above, the ALJ erroneously discredited Ms. Moore's statements regarding the frequency of her lupus flare ups. This error caused an improper account of the frequency and intensity of her flare ups in the hypothetical presented to the VE. The ALJ ignored testimony by the VE in which he stated that there would be "no work whatsoever" for Ms. Moore if she were required to be absent from work frequently due to lupus flares. [R. at 48.] The failure to account for the frequency of Ms. Moore's lupus flares in the ALJ's hypothetical to the VE constitutes reversible error.

## VI.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is **REVERSED** and **REMANDED.**

SO ORDERED.

Date: 09/18/2012

                                              Hon. Tanya Walton Pratt, Judge
                                              United States District Court
                                              Southern District of Indiana

DISTRIBUTION:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
United States Attorney's Office
tom.kieper@usdoj.gov